**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Delois Daniels, | ) | C.A. No.: 3:09-cv-182-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| John M. McHugh, Secretary of the Army, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This employment litigation matter is before the court upon Plaintiff Delois Daniels' ("Plaintiff") objections to a United States Magistrate Judge's Report and Recommendation ("R&R" or "Report"), which recommends that this court grant the Secretary of the Army's motion for summary judgment. At the time Defendant terminated Plaintiff's employment, she was working in a civilian position with the Army as a nurse practitioner at the Troop Medical Clinic of Moncrief Army Community Hospital at Fort Jackson. In this suit, Plaintiff claims she was discriminated against based on her race in violation of Title VII, was subjected to a hostile work environment, and was terminated in violation of public policy. Having reviewed the entire record, including Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this order.

# LEGAL STANDARDS

## I. The Magistrate Judge's Report and Recommendation

The Magistrate Judge made her review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.*

## II. Legal Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## ANALYSIS

The Magistrate Judge's Report and Recommendation sets forth in detail the relevant facts and the applicable law to this matter, and the court incorporates such without a recitation and without a hearing. At the outset, the court also acknowledges Plaintiff's explanation that she has not asserted a claim for disparate pay, as well as Plaintiff's consent to the dismissal of her retaliation claim based on her failure to exhaust her administrative remedies. Therefore, the court grants Defendant's motion for summary judgment with respect to that claim.

### I.     Race Discrimination Claim

In her complaint, Plaintiff alleges that she was subject to disparate treatment and ultimately terminated because she is an African-American. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff establishes a prima facie case, the employer must then demonstrate that the plaintiff was rejected, or someone else was

3

preferred, for a legitimate, nondiscriminatory reason. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). Then, if the employer satisfies its burden of production, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence. *Id.* at 143.

After considering Plaintiff's claim, the Magistrate Judge recommended that the court grant Defendant's motion for summary judgment with respect to this claim. In making this recommendation, the Magistrate Judge reached two alternative conclusions: first, that Plaintiff has failed to make a prima facie case of discrimination and, second, that even if Plaintiff did establish a prima facie case of discrimination, she failed to offer sufficient evidence to show that Defendant's reason for terminating Plaintiff's employment was pretextual. The court agrees with the Magistrate Judge's recommendation, as the record reflects the fact that Plaintiff failed to perform her work in a satisfactory manner and that this unsatisfactory performance constituted the reason Defendant terminated Plaintiff's employment, and not because she was African-American.

As Plaintiff was informed, she was terminated during her probationary period based on her "failure to follow supervisory instructions and/or clinic policies." (Def. Mot. for S.J. Ex. 30). As evidenced by the record, there were four aspects of Plaintiff's performance at work, which prove that Plaintiff was not performing her job satisfactorily at the time of her termination and was not following supervisory instructions or clinic policies: (1) numerous support staff had complained that Plaintiff created a hostile and unpleasant working environment; (2) Plaintiff repeatedly disregarded her supervisors' instructions concerning

4

pap smear tests on trainees; (3) Plaintiff accepted walk-in patients in violation of clinic policy, which caused schedule disruptions; and (4) Plaintiff failed to initiate discharge papers for a trainee as instructed by her supervisor.

With respect to the complaints lodged against Plaintiff by support staff, the Magistrate Judge correctly noted that, over a several month period of time, four individuals submitted statements complaining about Plaintiff's conduct towards them and/or other staff in their unit. Sergeant Carla Lowe provided two statements regarding Plaintiff, one in which she opined that Plaintiff was a significant factor in the high personnel turnover rate in her division based on the conduct of Plaintiff towards other staff members, and the other in which she recounted Plaintiff inappropriately disrupting a counseling session she was having with another soldier. Sergeant Jaime Morales offered a statement that Plaintiff made her dread coming to work, and Sergeant Leandra Steele offered a statement that Plaintiff created a difficult and stressful working environment by belittling her in front of other soldiers and by undermining her rank. Lastly, Sergeant Deborah Ogburn also offered a statement that working with Plaintiff was unpleasant because Plaintiff was rude and voiced disagreement with policies in front of patients.

In her objections, Plaintiff asks the court to review Carla Lowe's statements and deposition testimony because Plaintiff believes a review of Ms. Lowe's testimony proves that she was creating a hostile work environment for Plaintiff. (Objections at 7.) More specifically, Plaintiff directs the court's attention to particular statements made by Ms. Lowe, which proved to be inconsistent and which show that she asked Morales, Ogburn, and Steele

5

to write statements about Plaintiff's conduct at work. (*Id.* at 6 n.11.) Plaintiff also argues that "Ms. Ogburn had to be removed because of her interaction with the Plaintiff, but Lowe went out of her way to find Ogburn a job. Even based on the record you can see that the statements were requested and the Defendant's own employees had issues with drafting the statement." (*Id.* at 7.)

As the Magistrate Judge found, regardless of the motivation behind Ms. Lowe's statements and regardless of whether or not Morales, Ogburn, and Steele were instructed to write statements, Plaintiff has not offered any evidence that creates a general dispute over the fact that these four individuals did in fact lodge complaints about Plaintiff to their supervisors. Nor did Plaintiff offer any evidence to show that those individuals recanted their statements regarding Plaintiff's conduct towards them or that they were otherwise false. Therefore, the record supports the finding that Plaintiff's superiors reasonably believed that Plaintiff treated the staff in a derogatory manner. Moreover, the comments made by these staff members were only one of the problems that arose with Plaintiff's conduct at work. As the record reflects, Plaintiff was ultimately discharged for failing to follow her supervisor's instructions and Clinic policy, and to support this reasoning, Defendant offered evidence that Plaintiff repeatedly disregarded her supervisors' instructions concerning pap smear tests on trainees; Plaintiff accepted walk-in patients in violation of clinic policy, which caused schedule disruptions; and Plaintiff failed to initiate discharge papers for a trainee as instructed by her supervisor.

With respect to Plaintiff repeatedly disregarding her supervisors' instructions concerning pap smear tests, Dr. Perez, Plaintiff's supervisor, informed her on April 20, 2006 and again on June 9, 2006, not to perform pap smears on trainees for any reason; yet, despite his instructions, Plaintiff performed pap smears on two initial trainees on June 29 and July 12 of 2006. One of these test results came back abnormal, which caused Dr. Perez to instruct Plaintiff to initiate discharge papers for the trainee. Instead of initiating the discharge, however, Plaintiff informed the trainee to follow-up at her next duty station. On July 14, 2006, Dr. Perez counseled Plaintiff again about not performing pap smears on trainees and for not allowing walk-ins to the Clinic. Nevertheless, Plaintiff performed two more pap smears on initial trainees on July 17 and July 18 of 2006.

With respect to Plaintiff accepting walk-in patients in violation of clinic policy, which caused schedule disruptions, Dr. Perez instructed Plaintiff during his June 9, 2006 counseling with her that patients at the Clinic needed an appointment to be seen. Plaintiff, however, disregarded this instruction by accepting walk-in patients and by seeing patients after the Clinic had closed for the day. Dr. Dion Franga, then the Chief of Surgery at the Hospital, testified to receiving two complaints from staff members about Plaintiff accepting walk-in patients, which prevented soldiers with scheduled appointments from being seen at their appointed time, and about seeing patients after the Clinic had closed for the day. Additionally, Dr. Perez had to counsel Plaintiff about this infraction, and in his memorandum memorializing his meeting with Plaintiff, Dr. Perez further stated, "[Plaintiff] has not proven to be a team player and has been non compliant in following clinic policy as well as Army

7

Regulations (AR 40-501, dated: 16 February 2006) governing the processing of trainees." (Def. Mot. for S.J., Ex. 24.) Based on all of these incidents, as evidenced by the record, the Magistrate Judge concluded that Defendant's reason for terminating Plaintiff's employment during her probationary period—that she failed to follow supervisory instructions and clinic policies—was both legitimate and non-discriminatory and not a pretext for impermissible discrimination. He further found that Plaintiff failed to show that she was treated less favorably than a similarly-situated individual outside her protected class.

Plaintiff objects to these findings, and in doing so, she asks the court to review Plaintiff's actual performance compared to Defendant's contentions. She states:

> Specifically, walk-ins would be seen for emergencies only. The Plaintiff's counterparts were instructed to keep a record of what the Plaintiff was doing during work hours. The Plaintiff was never told by the Defendant to not perform Pap smears on trainees until the phone call of April 20, 2006. Consequently the instruction from [Dr.] Perez did not clarify if medically necessary or not.

(*Id.* at 5.) Plaintiff further states:

> Regarding the issue of whether the Plaintiff was permitted to perform pap smears, the difference in testimony is extraordinary. That testimony on record of the 9 JUN 06 Providers Counseling session pertaining to the well women exam indicates that LTC Martin, the Plaintiff's senior rater, who is also a Nurse Practitioner, stated, 'As I recall, they said there were to be no routine pap smears on trainees—I mean, if there was something extraordinary that required a pap smear, that was okay, some other condition perhaps that merited.' The Plaintiff was required by Policy to do full discharge physical, to include, a pap smear which was required for all female soldiers, to include those in basic training. The Plaintiff performed PAP's on individuals who were clinically indicated and who were getting out of the military.

8

(*Id.* at 7.) Based on these arguments, Plaintiff essentially contends that she was not told by her supervisor, Dr. Perez, not to perform pap smears on trainees until a phone conversation on April 20, 2006, and that Dr. Perez "did not specify whether the pap were of medical necessity or not." (*Id.* at 5.)

After considering Plaintiff's objections, the court adopts the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment with respect to Plaintiff's race discrimination claim. Based on Plaintiff's work performance, Defendant could reasonably conclude that she was not performing her job satisfactorily and that she was failing to comply with the Clinic's procedures and her supervisor's instructions. As the Magistrate Judge noted in his Report, Plaintiff was given notice and the opportunity to improve based on the informal discussions, phone conversations, and counseling sessions she received about her infractions. If Plaintiff had any uncertainty as to how she should comply with the instructions of her supervisors or the Clinic's policies, she had ample opportunity to seek a clarification. And from the record before this court, none of the orders or policies Plaintiff was to follow appears to be subject to interpretation. Dr. Perez informed her on several occasions not to perform pap smears on new trainees and not to accept walk-in patients, yet Plaintiff decided to do both. Therefore, the court finds that Defendant had a legitimate, non-discriminatory reason to terminate Plaintiff's employment, which Plaintiff

has not shown to be pretextual, and it grants Defendant's motion for summary judgment with respect to Plaintiff's race discrimination claim.[1]

## II.     Hostile Work Environment Claim

In her complaint, Plaintiff also asserts a hostile work environment claim. To assert a hostile work environment claim based on race, a plaintiff must show that "the offending conduct (1) was unwelcome, (2) was based on her [race], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *See Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc). Plaintiff contends that Dr. Perez, her supervisor, subjected her to a hostile work environment because he initiated an improper Equal Employment Opportunity investigation inquiry of the complaints lodged against Plaintiff's conduct at the Clinic. It appears that after the four individuals submitted statements complaining about Plaintiff's conduct, as discussed above, Defendant opted to have an Equal Employment Opportunity investigation conducted on Plaintiff to determine if any Equal Employment Opportunity violations had occurred. The inquiry did not raise any concerns; therefore, the investigation was concluded without any action being taken. Plaintiff claims this is proof that she was subjected to a hostile work environment because it shows Dr. Perez constantly

---

[1] To the extent Plaintiff asserts a gender discrimination claim, the Magistrate Judge also recommended that the court grant Defendant's motion for summary judgment with respect to that claim as well. It does not appear to the court that Plaintiff asserted a gender discrimination claim in her complaint, but to the extent that it can be interpreted to assert such a claim, the court grants Defendant's motion for summary judgment for the reasons supporting the denial of Plaintiff's race discrimination claim.

attempted to get rid of her. The Magistrate Judge disagreed. He determined that Plaintiff failed to establish a hostile work environment claim because she failed to show that the alleged harassment was based on her sex or race and because she failed to show that the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment. (R&R at 21.)

Plaintiff addresses her hostile work environment claim in her objections. She states:

> [W]hen looking at the record holistically, the actions of Perez towards the Plaintiff and the actions of instructing the persons to document the Plaintiff's action created and perpetuated a hostile work environment. The majority of the staff was out to undercut and circumvent [Plaintiff's] every move under the control and directions of Perez. Moreover, there is overwhelming facts and evidence to conclude that the Plaintiff has established a hostile work environment claim and that the alleged conduct was sufficiently severe or pervasive so as to alter the condition of her employment and create an abusive atmosphere. The Secretary's reliance on Hartsell is misplaced as Hartsell dealt with unpleasant and sometime cruel behavior. In this case at bar, there is a equal opportunity inquiry which is unknown to the Plaintiff, there is a standard of care review by the risk management Division also unknown to the Plaintiff and a well planned covert operation to undermine the work productivity and relations regarding under the control and direction of Perez to have the Plaintiff terminated. Clearly from the record the Court is in error and there is a genuine issue of material fact for a jury.

(Objections at 5.)

After considering Plaintiff's objections, the court adopts the Magistrate Judge's recommendation and grants Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claim. Plaintiff's claim is based on the allegation that Dr. Perez and other staff members of the Clinic were working together, without Plaintiff's knowledge, to have her terminated. But as the Fourth Circuit has noted, "To be actionable,

the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (citation omitted). It is undisputed that Plaintiff had no idea she was the subject of an Equal Employment Opportunity investigation; therefore, she cannot use this fact as a basis for showing she was subject to an abusive work environment prior to her termination. Moreover, Plaintiff has not offered any argument or evidence in her Objections to rebut the Magistrate Judge's finding that she has failed to make a showing that her race was the motivating factor behind the hostile work environment she was allegedly subjected to. Therefore, the court grants Defendant's motion for summary judgment with respect to this claim.

### III.     Wrongful Termination in Violation of Public Policy

Lastly, the Magistrate Judge recommended that this court grant Defendant's motion for summary judgment with respect to Plaintiff's claim that she was wrongfully terminated in violation of public policy. The Magistrate Judge concluded that Plaintiff failed to assert any basis for jurisdiction over this claim and that Title VII was the exclusive, preemptive remedy for claims arising out of discrimination in federal employment. (R&R at 22–23.) Plaintiff did not object to the Magistrate Judge's recommendation on this matter; therefore, the court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

## **CONCLUSION**

Therefore, it is ordered that Army Secretary John M. McHugh's motion for summary judgment is granted in its entirety.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

March 16, 2011                                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                                      United States District Judge